Samuel K. CROCKER, Trustee,
Plaintiff/Appellee,

v.

Richard RYAN, et al.,
Defendants/Appellants.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 30, 1995.

Permission to Appeal Denied Dec. 18, 1995.

552

John G. Doak, Sr., Nashville, for defendants.

M. Andrew Hoover, Pulaski, for plaintiff.

### *OPINION*

CANTRELL, Judge.

The question we must resolve on appeal is whether the evidence preponderates against the chancellor's finding that a conveyance rendered a property owner insolvent and was, therefore, fraudulent as to subsequent creditors. We find that the evidence does preponderate against the finding and reverse the chancellor's decree.

### I.

In the summer of 1989 Mrs. Ruth Ryan at age seventy-one was seriously ill with multiple life-threatening conditions. She had a modest home, a $10,000 savings account, and hospitalization insurance through Medicare, which was supplemented by Blue Cross/Blue Shield. She also drew two pensions totaling approximately $1,000 per month.

On August 20, 1989, while in the hospital for the fourth time in four months, Mrs. Ryan executed a durable and general power

of attorney to Jane Burton, one of her six children. Five days later, believing that Mrs. Ryan was near death and fearing that since Mrs. Ryan had no will the state would "step in" and assert an interest in her property, Ms. Burton executed a quitclaim deed to herself and her brother.

Mrs. Ryan, however, survived and on September 13, 1989 she entered the Imperial Manor Convalescent Center where she stayed until September 28, 1990. At that time she was well enough to leave the convalescent center, and in March of 1991 she returned to the home she left in August of 1989.

Although $15,704 had been paid on her behalf, Mrs. Ryan had an outstanding bill of more than $15,000 when she left Imperial Manor. Interest accrued at 1.0% per month on the unpaid balance. Between September of 1990 and August of 1991, Ms. Burton paid an additional $8,071.86 on her mother's outstanding bill, but the convalescent center grew impatient and threatened legal action. Mrs. Ryan filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code listing Imperial Manor as her only creditor. Imperial Manor filed a proof of claim in the amount of $10,337.46.

The trustee in bankruptcy brought this action to set aside the conveyance to Mrs. Burton and her brother. The chancellor found that although not made with a fraudulent intent, the transfer rendered Mrs. Ryan insolvent, making the conveyance fraudulent under Tenn.Code Ann. § 66–3–305. That section provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to such person's actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

Tenn.Code Ann. § 66–3–310 gives the court the power to set aside the conveyance.

■ A person is insolvent according to Tenn.Code Ann. § 66–3–302 "when the present fair salable value of the person's assets is less than the amount that will be required to pay the probable liability on such person's existing debts as they become absolute and matured." We think the critical part of the definition for the purpose of this case is the word "existing" as applied to a person's debts. The debts that enter into the test for insolvency are the ones in existence when the conveyance is made. They may become due and payable at a future date, but they must be in existence at the time.

■ In this case the record does not show that Mrs. Ryan had any debts at the time the house was conveyed to her son and daughter. She was in the hospital, and we might infer that she had incurred some obligations, but she was covered by Medicare and Blue Cross/Blue Shield and she had $10,000 in a savings account. Therefore, we think the evidence preponderates against the chancellor's finding that the transfer rendered her insolvent. See Rule 13(d), Tenn.R.App.Proc.

■ If Mrs. Ryan was not rendered insolvent by the transfer, it was not fraudulent under the provisions of Tenn.Code Ann. § 66–3–305.[1]

■ There are, however, other sections of the Code that render certain conveyances fraudulent as to present or future creditors. Tenn.Code Ann. § 66–3–306 applies only to persons engaged in or about to engage in a business or a transaction with inadequate capital. The next two sections are more pertinent to this case. They provide:

> **66–3–307. Conveyances before debt incurred.**—Every conveyance made and every obligation incurred without fair consideration, when the person making the conveyance or entering into the obligation intends or believes that debts will accrue beyond the party's ability to pay as they mature, is fraudulent as to both present and future creditors.

1. We also think Tenn.Code Ann. § 66–3–305 refers to creditors in existence at the time the fraudulent conveyance is made. See the definition in Tenn.Code Ann. § 66–3–301(3). Imperial Manor was not a creditor at that time. Future creditors are protected in Tenn.Code Ann. § 66–3–306, 307 and 308.

**66-3-308. Conveyances with intent to defraud.**—Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud, either present or future creditors, is fraudulent as to both present and future creditors.

These sections apply to future creditors, but Tenn.Code Ann. § 66-3-307 requires that the transferor have an intent or belief that future debts will exceed the transferor's ability to pay and Tenn.Code Ann. § 66-3-308 requires an actual intent to hinder, delay, or defraud present or future creditors. There is no evidence that either state of mind animated Ms. Burton to transfer the property in August of 1989. The chancellor found that the defendants were not attempting to defraud Mrs. Ryan's creditors. We concur in that finding, and we think the evidence preponderates in favor of a finding that none of the defendants expected Mrs. Ryan to live long enough to incur debts in excess of the $10,000 she had in the bank.

Reversed and remanded. Tax the costs on appeal to the appellee.

LEWIS and KOCH, JJ., concur.